Maudie J. ROBERTS, Respondent,

v.

LABOR and INDUSTRIAL RELATIONS COMMISSION of Missouri, and Missouri Division of Employment Security, Appellants.

No. WD 47654.

Missouri Court of Appeals,
Western District.

Nov. 23, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 28, 1993.

Application to Transfer Denied
Feb. 22, 1994.

Sharon A. Willis, Kansas City, and Sandy Bowers, Jefferson City, for Missouri Division of Employment Sec.

James B. Crenshaw, Jefferson City, for Labor and Indus. Relations Com'n of Missouri.

Susan Kephart, St. Joseph, for respondent.

Before TURNAGE, C.J., and FENNER and ELLIS, JJ.

ELLIS, Judge.

The Labor and Industrial Relations Commission of Missouri (hereinafter "Commission") and the Missouri Division of Employment Security (hereinafter "Division") appeal from a judgment of the circuit court reversing the Commission's decision that the Division could recoup certain unemployment compensation benefits previously overpaid to Maudie J. Roberts by reducing any future benefits she might receive by the amount of the overpayment. Appellants contend that the Commission correctly applied Missouri law in holding that the overpayments to Roberts could be recouped by the Division. We reverse and reinstate the Commission's decision.

On November 17, 1991, respondent Maudie J. Roberts made a claim for unemployment compensation benefits. The Division mailed a notice of this claim to Roberts' last employer, the Daviess County Senior Citizen Center. On December 23, 1991, the employer filed a letter of protest claiming Roberts had

refused an offer of work made to her on December 19, 1991, and was therefore disqualified from receiving benefits. On December 31, 1991, a Division claims deputy determined that she was not disqualified for benefits because "there had only been a discussion with a coworker" and "no job offer was made by the employer." The employer filed an appeal from that determination on January 14, 1992, and on February 25, 1992, the Division's Appeals Tribunal held an evidentiary hearing on the issue. Roberts, who had already begun receiving benefits, continued to receive them throughout the pendency of the employer's appeal. On March 3, 1992, the Appeals Tribunal reversed the deputy's determination and found Roberts was in fact disqualified for benefits because without good cause, "on December 19, 1991, [she] failed to accept available, suitable work offered to her by her former employer." The appeals referee made no finding that Roberts willfully failed to disclose or falsified any fact regarding her receipt of benefits. She next appealed to the Commission, which affirmed the Appeals Tribunal and adopted the referee's written decision as its own on March 30, 1992. The Commission's decision became final on April 9, 1992, and Roberts took no further appeal.

The following day, another Division deputy issued a determination that Roberts was overpaid $400 in benefits for the period December 15, 1991[1] through February 22, 1992[2] because those benefits were paid to her "during a period of disqualification." The deputy made no finding of fraud, nondisclosure or misrepresentation on Roberts' part, and informed her that "[t]he Division will take repayment from any future weeks for which you claim [benefits] and are eligible after this determination becomes final." She

appealed to the Appeals Tribunal on April 15, 1992, and on June 9, 1992 a hearing was held before a different appeals referee. On July 1, 1992, the referee affirmed the deputy's determination, finding that because Roberts "was under a disqualification when she was paid the benefits for the period December 15, 1991 through February 22, 1992," she was paid $400 in "benefits to which she was not entitled." The Appeals Tribunal also directed the Division to recoup the $400 by deducting it "from future benefits payable" to Roberts despite the absence of fraud on her part. She again appealed to the Commission, which on August 27, 1992, affirmed the Appeals Tribunal's decision and adopted as its own the referee's written opinion, finding that they were "in accordance with the relevant provisions of the Missouri Employment Security Law." The Commission's decision became final on September 7, 1992. Roberts then filed a petition for judicial review in the Daviess County Circuit Court, which reversed the Commission's decision allowing recoupment of the $400 in overpaid benefits. This appeal followed.[3]

▇▇▇ At issue in this case are various provisions of Chapter 288, RSMo, the Missouri Employment Security Law.[4] Although this cause is before us on appeal from the circuit court, we review the decision of the Commission, not the judgment of the circuit court. *Kansas City Club v. Labor & Indus. Relations Comm'n,* 840 S.W.2d 273, 274 (Mo. App.1992). In their sole point relied on, appellants contend that the Commission correctly interpreted Missouri law concerning recoupment of benefits in Roberts' case. We are not bound by the Commission's conclusions of law, including its interpretation of statutes. *Division of Employment Sec. v.*

---

1. In Missouri, unemployment compensation claimants are not paid benefits for any part of a week in which they are found to be ineligible. *Graves v. Meystrik,* 425 F.Supp. 40, 42 (E.D.Mo.), *aff'd,* 431 U.S. 910, 97 S.Ct. 2164, 53 L.Ed.2d 220 (1977). Thus although the disqualifying event occurred Thursday, December 19, 1991, the period of disqualification actually began Sunday, December 15, 1991.

2. Roberts apparently stopped making further unemployment compensation claims after the calendar week ending Saturday, February 22, 1992.

3. The Commission's final determinations that Roberts was in fact disqualified for unemployment compensation benefits during the period in question and thus received $400.00 in benefits to which she was not entitled are not disputed by either party in this cause. The sole question on appeal is whether the Division can recoup this overpayment under Missouri law.

4. All statutory references are to RSMo Supp. 1992 unless indicated otherwise.

*Hatfield,* 831 S.W.2d 216, 218 (Mo.App.1992). However, the Commission's interpretation and construction of the provisions of the Missouri Employment Security Law is entitled to great weight. *Stanton v. Missouri Div. of Employment Sec.,* 799 S.W.2d 202, 205 (Mo.App.1990).

■ Roberts argues that in permitting recoupment, the Commission erred in failing to apply § 288.070.6, which provides:

> Benefits paid during the pendency of the period to apply for reconsideration, file an appeal, or petition for judicial review or during the pendency of any such application, appeal, or petition shall be considered as having been due and payable regardless of any redetermination or decision unless the modifying or reversing redetermination or decision establishes that the claimant willfully failed to disclose or falsified any fact which would have disqualified him or rendered him ineligible for such benefits as contemplated in subsection 9 of section 288.380.

She further contends that since there was no finding that she willfully failed to disclose or falsified any fact which would have disqualified her for benefits as contemplated in § 288.380.9, the $400 in benefits she received during the pendency of her former employer's appeal must "be considered as having been due and payable." Therefore, Roberts reasons, those benefits are not subject to recoupment despite the subsequent determination that she was in fact disqualified for benefits during that period.

If § 288.070.6 was all the General Assembly has said on the subject of recoupment, we would have no difficulty agreeing with the trial court and reversing the Commission's decision. However, the Commission adopted the finding of the Appeals Tribunal that "Section 288.381.1 does allow the Division to collect ... the [$400] overpayment" to Roberts by deducting it "from any further benefits payable to [her] ... as provided in Section 288.380.12." Section 288.381.1, titled in relevant part "Collection of benefits paid when claimant later determined ineligible," provides:

> **The provisions of subsection 6 of section 288.070 notwithstanding,** benefits paid to a claimant pursuant to subsection 5 of section 288.070 to which the claimant was not entitled based on a subsequent determination, redetermination or decision which has become final, shall be collectible by the division as provided in subsections 11 and 12 of section 288.380. [Emphasis added.]

The plain meaning of the word "notwithstanding" is "in spite of" or "regardless of." *Missouri Pac. R.R. v. Rental Storage & Transit Co.,* 524 S.W.2d 898, 908 (Mo.App. 1975). Section 288.381.1 must therefore be applied *in spite of* the provisions of § 288.-070.6 on which Roberts relies. To hold otherwise would be to ignore the General Assembly's unambiguously expressed legislative intention that § 288.381.1 is to be enforced *regardless of* § 288.070.6.

Nevertheless, Roberts vigorously insists that § 288.070.6 is controlling, citing *Belle State Bank v. Industrial Comm'n,* 547 S.W.2d 841 (Mo.App.1977). In *Belle State Bank,* two bank employees who had voluntarily quit their jobs filed claims for unemployment compensation benefits. A Division claims deputy issued determinations that both were disqualified for benefits, and they appealed to the Appeals Tribunal. An appeals referee reversed the deputy's determinations and his findings and decision were adopted by the Commission after hearing the bank's appeal. The bank then filed a petition for judicial review in the circuit court, which upheld the decision of the Commission. Again the bank appealed, and the appeals court set aside the Commission's decision permitting the bank employees to receive benefits on the grounds they had left work "voluntarily without good cause" in violation of § 288.050.1(1), RSMo Supp.1975. After acknowledging that its holding on the "good cause" issue was "dispositive of the present appeal," the court addressed other issues "not presented by the parties" which it believed merited "*sua sponte* comment." *Belle State Bank,* 547 S.W.2d at 847–48. In doing so, the court observed:

> In view of the provisions of § 288.070, subds. 5 and 6, in effect at the time of the initial redetermination by the appeals referee declaring that claimants were not dis-

qualified for benefits, claimants no doubt already have received all of the benefits payable under the Law, none of which can be recovered from them.

*Belle State Bank,* 547 S.W.2d at 849. This observation is clearly *obiter dictum.* *See State ex inf. McKittrick v. American Colony Ins. Co.,* 336 Mo. 406, 424, 80 S.W.2d 876, 882 (banc 1935). More importantly, the opinion in *Belle State Bank* gives no indication whether the court considered the "notwithstanding" clause of § 288.381.1, which was in effect at that time as § 288.381, RSMo Supp. 1975.[5] We therefore reject Roberts' claim that *Belle State Bank* is controlling.

 We next consider whether Roberts was paid benefits pursuant to § 288.070.5 to which she was not entitled based on a subsequent final determination, redetermination or decision. Section 288.070.5 reads as follows:

**Benefits shall be paid promptly** in accordance with a determination or redetermination under this section, or the decision of an appeals tribunal, the labor and industrial relations commission of Missouri or a reviewing court **upon the issuance of such determination, redetermination, or decision** (regardless of the pendency of the period to apply for reconsideration, file an appeal, or petition for judicial review as provided in this section, or section 288.190, 288.200, or 288.210, as the case may be, or the pendency of any such application, appeal, or petition) **unless and until such determination, redetermination or decision has been modified or reversed** by a subsequent redetermination or decision, **in which event benefits shall be paid or denied for weeks of unemployment thereafter in accordance with such mod-**

ified or reversed redetermination or decision.

[Emphasis added.]

This statute was enacted by the General Assembly in 1972 in apparent response to the United States Supreme Court's decision in *California Dep't of Human Resources Dev. v. Java,* 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971).[6] It provides simply that once unemployment compensation benefits are granted to a claimant, they must be paid promptly and can be terminated only after the determination or decision authorizing the payment of benefits has been modified or reversed by a subsequent determination or decision, and that in the event of such a modification or reversal, the benefits will be paid or denied thereafter in accordance with the modifying or reversing determination or decision. *See also Chemtech Indus., Inc. v. Labor & Indus. Relations Comm'n,* 617 S.W.2d 121, 125 (Mo.App.1981). Section 288.070.5 applies only to ongoing benefit payments and does not, as Roberts suggests, prohibit subsequent recoupment of overpayments by the Division.[7]

It is undisputed that Roberts was paid benefits promptly upon the initial determination she was eligible to receive them, that she continued to receive benefits in a timely manner throughout the pendency of her former employer's appeal, and that her benefits were not terminated prior to reversal of that determination by the Appeals Tribunal. It is also undisputed that there was a subsequent final decision by the Commission that she was not entitled to receive those benefits because she was disqualified. Accordingly, the Commission correctly interpreted and applied §§ 288.381.1 and 288.070.5 in reaching

5. Section 288.381 was enacted on April 27, 1972, some three months after §§ 288.070.5 and 288.-070.6 became law. Laws of Mo. 1971–1972, pp. 918, 921.

6. Subject to a narrow exception, prior Missouri statutes allowed unemployment compensation benefits to be suspended during the pendency of an appeal. *See* § 288.070.4, RSMo 1969; § 288.150.2, RSMo 1949; § 9432(b), RSMo 1939. However, in the *Java* case, the Court ruled that a similar California statute violated 42 U.S.C. § 503(a)(1), which requires states to administer federally-funded unemployment compensation benefit programs in a manner "reason-

ably calculated to insure full payment of unemployment compensation when due." *Java,* 402 U.S. at 133, 91 S.Ct. at 1355.

7. Applying Va.Ann.Code § 60.1–61 (Michie 1982), which was very similar to our § 288.-070.5, one federal district court commented that: "Any action under this section will only affect the ongoing payments.... Virginia courts have consistently held that § 60.1–61 does not apply to overpayments and just to current benefits." *Brewer v. Cantrell,* 622 F.Supp. 1320, 1328 (W.D.Va.1985), *aff'd,* 796 F.2d 472 (4th Cir. 1986).

its conclusion that the $400 in benefits paid to Roberts from December 15, 1991 to February 22, 1992 were collectible by the Division as provided in § 288.380.12.[8]

The last remaining issue is whether the Commission properly interpreted § 288.-380.12 in requiring recoupment of the $400 in overpaid benefits. Section 288.380.12 provides:

> **Any person who,** by reason of any error or omission or because of a lack of knowledge of material fact on the part of the division, **has received any sum as benefits under this law** while any conditions for the receipt of benefits imposed by this law were not fulfilled in his case, or **while he was disqualified from receiving benefits, shall** after an opportunity for a fair hearing under the provisions of subsection 2 of section 288.190 **have such sums deducted from any further benefits payable to him under this law,** provided that the division may elect not to process such possible overpayments where the amount of same is not over five dollars.

[Emphasis added.]

Here, the Commission and the Appeals Tribunal made specific findings that Roberts received $400 in benefits while she was disqualified from receiving them. Roberts argues that § 288.380.12 is nevertheless inapplicable because the Commission had no competent and substantial evidence before it that her receipt of those benefits was attributable to any error, omission, or a lack of knowledge of a material fact on the Division's part. This claim is without merit. The Commission not only had before it, but adopted as its own, the detailed factual findings contained in the March 3, 1992, Appeals Tribunal decision, which explicitly reversed the deputy's initial finding of December 31, 1991, that Roberts had not received an offer of suitable work from her former employer on December 19, 1991. But for that erroneous or uninformed initial finding on the part of a Division claims deputy, Roberts would not have been paid the $400 in benefits which is the subject of this appeal. Accordingly, the Commission properly directed the Division to recoup the $400 by deducting that amount from any further unemployment compensation benefits payable to her pursuant to § 288.380.12.

In her final argument, based on public policy, Roberts refers us to § 288.020.2, RSMo 1986, which provides that "This law shall be liberally construed to accomplish its purpose to promote employment security ... by providing for the payment of compensation to individuals in respect to their unemployment." Unfortunately, this provision is of no help to her since the General Assembly spoke clearly on the subject of recoupment when it adopted § 288.381.1.

We conclude the Commission did not err in deciding that the Division could recoup the $400 overpayment to Roberts by deducting that sum from future benefits payable to her.[9] Accordingly, the circuit court's order reversing the Commission is reversed and this cause is remanded to the circuit court with directions to reinstate the Commission's decision.

All concur.

---

**8.** Section 288.381.1 allows recovery of overpayments under either §§ 288.380.11 or 288.380.12. The former applies in situations where a claimant is overpaid "by reason of the nondisclosure or misrepresentation by him or another of a material fact...." Section 288.380.11. The Commission opted, as did the Appeals Tribunal, to proceed under § 288.380.12 because it determined "there was no finding of fraud in the deputy's determination finding [that Roberts was] overpaid...."

**9.** In their brief and during oral argument, appellants declared their view that § 288.381.1 compels recoupment in all cases where claimants received overpayments due to error, omission, or a lack of knowledge of a material fact on the Division's part. We disagree. Section 288.381.1 states only that such overpayments "*shall be collectible* by the [D]ivision" using the mechanism provided in § 288.380.12. Since "collectible" means simply "capable of being collected," *Webster's Third New Int'l Dictionary* 444 (Philip B. Gove ed. 1961), and considering the liberal construction the Missouri Employment Security Law must be given under § 288.020.2, it is clear the Division has discretion, indeed an obligation, to take into account issues of fairness and economic hardship in deciding whether to seek recoupment in such cases.