DISSENTING OPINION BY
JUDGE WOJCIK
I respectfully dissent. The well-written majority opinion disposing of the parties’ applications for summary relief[1] and Respondents’ preliminary objections in the nature of demurrer[2] is based upon the premise that direct care workers (DCWs) are employed in “domestic service,” and thus are not “employees” eligible to collectively bargain under Section 3 of the Pennsylvania Labor Relations Act (PLRA).[3] However, whether DCWs are employed in “domestic service” is a legal determination that cannot be made at this juncture in the absence of a developed factual record, which has yet to occur. See Dutrow v. Workers’ Compensation Appeal Board (Heckard’s Catering), 158 Pa.Cmwlth. 637, 632 A.2d 950, 952 (1993) (legal determination as to whether a claimant was employed in “domestic service” was based on factual record).
As the majority sets forth, the PLRA is Pennsylvania’s analog to the National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169. Both the PLRA and the NLRA authorize “employees” to self-organize, to form, join or assist labor organizations, to collectively bargain, and to engage in activities for the purposes of collective bargaining. Section 5 of the PLRA, 43 P.S. § 211.5; 29 U.S.C. § 157.
However, both the PLRA and NLRA exclude individuals employed in “domestic *1280 service” from the term “employee.” Specifically, Section 3(d) of the PLRA provides:
The term ‘employe’ shall include any employe, and shall not be limited to the employes of a particular employer, unless the act explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute, or because of any unfair labor practice, and who has not obtained any other ’ regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any person in the home of such person, or any individual employed by his parent or spouse.
43 P.S. § 211.3 (emphasis added).[4]
However, the PLRA does not define “domestic service.” When words of a statute are undefined, they must be. construed in accordance with their common and approved usage. Section 1903(a) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1903(a); Adams Outdoor Advertising, L.P. v. Zoning Hearing Board of Smithfield Township, 909 A.2d 469 (Pa.Cmwlth.2006). “Where a court needs to define an undefined term, it may consult definitions in statutes, regulations or the dictionary for guidance, although such definitions are not controlling.” Adams Outdoor, 909 A.2d at 483; see THW Group, LLC v. Zoning Board of Adjustment, 86 A.3d 330 (Pa.Cmwlth.), appeal denied, 627 Pa. 776, 101 A.3d 788 (2014).
Pennsylvania courts have examined the term “domestic service” in other labor and employment contexts. For instance, Section 321 of the Workers’ Compensation Act (Act)[5] excludes persons engaged in “domestic service” from provisions of the Act. This Court interpreted “domestic service” as work that “serves the needs of a household.” Dutrow, 632 A.2d at 962 (citing Viola v. Workmen’s Compensation Appeal Board (Welch), 121 Pa.Cmwlth. 47, 549 A.2d 1367, 1369 (1988)). In Viola, the claimant was hired to care for her employer’s invalid wife. Her job duties entailed administering medication, feeding, bathing and dressing the employer’s wife, and helping her in and out of bed. We determined the claimant did not serve, nor was she employed to serve, the needs of the household. Rather, her role related to the personal care and specialized medical needs of the employer’s wife, not performing household duties. Because the claimant’s job duties were more akin to those of a nurse’s aide, and did not involve the performance of household duties, we concluded the claimant was not engaged in “domestic service” for workers’ compensation purposes. 549 A.2d at 1369; of Dutrow (baby-sitting constituted “domestic service” because it served the needs of the household, not just the needs of the child).
In Jack v. Belin’s Estate, 149 Pa.Super. 531, 27 A.2d 455, 457 (1942), our Superior Court held the gardener of a household estate was engaged in domestic service for purposes of the Act, The Court explained *1281 that domestic service contributes to the personal needs and comfort of the employer, as opposed to an enterprise for profit. The Court continued:
Cooks and house maids are domestic servants, not because they work indoors, but because they serve the needs of the household. Similarly, one who drives an automobile in bringing supplies from market or in disposing of waste materials or who raises vegetables and produce for use on the estate is a domestic servant in the broader sense contemplated by the [Workers’ Compensation] Act. Growing flowers for the delight and pleasure of the family of the owners is the same kind of service.
Jack, 27 A.2d at 457 (emphasis added).
Similar to the Act, the Pennsylvania Minimum Wage Act of 1968 (MWA)[6] also exempts employment for “[domestic services in or about the private home of the employer” from the statute’s minimum wage and overtime requirements. Section 5(a)(2) of the MWA, 43 P.S. § 333.105(a)(2). The regulation defining “domestic services” provides:
Work in or about a private dwelling for an employer in his capacity as a householder, as distinguished from work in or about a private dwelling for such employer in the employer’s pursuit- of a trade, occupation, profession, enterprise or vocation.
34 Pa. Code § 231.1(b).
In Bayada Nurses, Inc. v. Department of Labor and Industries, 607 Pa. 527, 8 A.3d 866, 883 (2010), the Supreme Court was asked to interpret the “domestic services” exemption of the MWA’s overtime provisions. The Court observed that the language of the MWA is consistent with the same exemption provided in Section 213(a)(5) of the federal Fair Labor Standards Act (FLSA), 29 U.S.C. § 213(a)(15), which does not prohibit an exemption for agency employment. The healthcare provider argued the- two statutes should be interpreted in pari materia, and that' the federal approach should govern, permitting agency employers to benefit from the domestic services exemption. The Court disagreed. Although the MWA and FSLA contain nearly identical exemption language, the- Court explained the federal exemption relating to “domestic services” was more expansive than the state regulation. Id. at 871, 877-78. The Court ruled that the state exemption was only meant to cover individuals directly employed by the householder, not those who were employed by third party agencies. Id. at 883. The Court held the FLSA does not supersede state law and Pennsylvania may enact and impose more generous overtime provisions than those contained under the FLSA. Id. Thus, the Court rejected the argument that the .domestic services exemption in the MWA should be construed in pari materia with the FLSA. Id.
Similarly, in Blue Mountain Mushroom Company, Inc. v. Pennsylvania Labor Relations Board, 735 A.2d 742, 748 (Pa.Cmwlth.1999), appeal denied, 567 Pa. 716, 785 A.2d 91 (2001), this Court rejected the notion that, because the PLRA was patterned after the NLRA,- Pennsylvania courts must adhere to federal interpretation. There, we examined whether the term “agricultural laborer” pertained to mushroom workers. “Agricultural laborers,” like domestic service workers, are excluded from the definition of employee under both the PLRA and the NLRA. 43 P.S. § 211.3; 29 U.S.C. § 152(3). Although mushroom workers were historically considered horticultural workers, in 1947, Congress directed the National Labor Re *1282 lations Board (NLRB) to follow the FLSA’s definition of “agriculture,” which included the production, cultivation, growing and harvesting of horticultural commodities. Blue Mountain, 735 A.2d at 747 (citing 29 U.S.C. § 203(f)). Notwithstanding, Pennsylvania was not constrained to follow the NLRB in redefining the term “employee” to include mushroom workers absent direction by the General Assembly. In Pennsylvania, mushroom production is considered horticultural, not agricultural. Id. Consequently, mushroom workers are “employees,” not “agricultural laborers,” for purposes of the PLRA. Id.
To date, there has been no statutory or regulatory expansion of the term “domestic service” under the PLRA to include personal care services, such as nurses, home health aides or personal care aides. But cf. 29 C.F.R. § 552.3 (federal regulation under the FLSA now includes “nurses,” “home health aides” and “personal care aides” in the definition of “domestic service employment”).[7] Pennsylvania courts have not included personal care services in its interpretation of the term “domestic service” in other labor contexts. See Dutrow; Viola.
According to Governor Thomas W. Wolfs Executive Order, No. 2015-05 (Executive Order), DCWs are individuals who provide “Participant-Directed Services,” which include:
personal assistance services, respite ,.. or similar types of services provided to a senior or a person with a disability who requires assistance ... to meet such person’s daily living need, (ii) ensure such person may adequately function in such person’s home, and (iii) provide such person with safe access to the community.
Section l(i) of the Executive Order. DCWs provide “in-home personal care service” through home care service programs, such as the Attendant Care Services Act (Act 150).[8] Section 1(f) of the Executive Order.
Act 150’s definition of “Attendant care services” embraces both personal care and domestic-type services. Specifically, Section 3 of Act 150 provides:
(1) Those basic and ancillary services which enable an eligible individual to live in his home and community rather than in an institution and to carry out functions of daily living, self-care and mobility-
(2) Basic services shall include, but not be limited to:
(i) Getting in and out of a bed, wheelchair and/or motor vehicle.
(ii) Assistance with routine bodily functions, including, but not limited to:
(A) Health maintenance activities.
(B) Bathing and personal hygiene.
(C) Dressing and grooming.
(D) Feeding, including preparation and cleanup.
(3) If a person is assessed as needing one or more of the basic services, the *1283 following services may be provided if they are ancillary to the basic services:
(i) Homemaker-type services, including, but not limited to, shopping, laundry, cleaning and seasonal chores.
(ii) Companion-type services, including, but not limited to, transportation, letter writing, reading mail and escort.
(iii) Assistance with cognitive tasks, including, but not limited to, managing finances, planning activities and making decisions.
62 P.S. § 3053 (emphasis added). Under Act 150, domestic-type services are ancillary to personal care. Id.
Significantly, it is the provision of domestic service that would exclude DCWs from the collectively bargaining table under the PLRA, not the provision of personal care. See Section 5 of the PLRA, 43 P.S. § 211.5. At this juncture, it is unclear whether the DCWs provide ancillary services akin to “domestic services” or just basic personal care services akin to that of a nurse’s aide. If the DCWs are “serving the needs of the household,” then the majority properly declared portions of the Executive Order invalid and void as contrary to statutory law. If, however, the DCWs are more like nurse’s aides, providing personal care (as opposed to household) services, then the Pennsylvania Labor Relations Board would presumably have jurisdiction over the subject matter at issue and we would analyze the Executive Order from that perspective. As more facts are needed to determine the DCWs’ legal status, I would deny summary relief and allow the case to proceed to trial.

. This Court may grant summary relief if the applicant's right to judgment is clear and no material issues of fact are in dispute. Pa. R.A.P. 1532(b); Jubelirer v. Rendell, 598 Pa. 16, 953 A.2d 514, 521 (2008).

. When ruling on preliminary objections in nature of demurrer, this Court is not required to accept as true any unwarranted factual inferences, conclusions of law, or expressions of opinion. Guarrasi v. Scott, 25 A.3d 394, 400 n. 5 (Pa.Cmwlth.2011).

.Act of June 1, 1937, P.L. 1168, as amended, 43 P.S. § 211.3.

. Similarly, Section 152(3) of the NLRA provides:
The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home ....
29 U.S.C. § 152(3) (emphasis added). .

. Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 676.

. Act of January 17, 1968, P.L. 11, as amended, 43 P.S. §§ 333.101-333.115.

. The definition of “domestic service employment” contained in Section 552.3 is derived from tire regulations under the Social Security Act (20 C.F.R. § 404.1057). 29 C.F.R. § 552.101. Prior to its amendment.in January 2015, Section 552.3 closely mirrored the Social Security Act regulation, which defines "domestic service” as "services of a household nature in or about a private home include services performed by cooks, waiters, butlers, housekeepers, governesses, maids, valets, baby sitters, janitors, laundresses, furnace men, caretakers, handymen, gardeners, footmen, grooms, and chauffeurs of automobiles for family use.” 20 C.F.R. § 404.1057. The Social Security Act does not include nurses, home health aides or personal care aides in its definition of “domestic service.” Id.

. Act of December 10, 1986, P.L. 1477, 62 P.S. §§ 3051-3058.